UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANE DOE, JOSEPH DOE; : | |
|     Plaintiffs; : | |
| : | No. 3:18-CV-00352 (VLB) |
| v. : | |
| : | |
| BAUSCH & LOMB, INC.; VALEANT : | May 16, 2018 |
| PHARMACEUTICAL : | |
| INTERNATIONAL, INC.; DOES 1– : | |
| 50, INCLUSIVE; BAUSCH & LOMB : | |
| HOLDINGS INC.; VALEANT : | |
| PHARMACEUTICALS NORTH : | |
| AMERICA LLM; VALEANT : | |
| PHARMACEUTICALS : | |
| INTERNATIONAL; : | |
|     Defendants. : | |

**RULING AND ORDER ON MOTION TO COMPEL PLAINTIFFS TO IDENTIFY THEMSELVES AND TO SUBSTITUTE THE REAL PARTIES IN INTEREST [DKT. 63]**

Before the Court is Defendants' Motion to Compel Plaintiffs to Identify Themselves and to Substitute the Real Parties in Interest. [Dkt. 63]. The question in this case is whether a practicing attorney and her husband may use pseudonyms to litigate a products liability suit pertaining to her medical complications after cataract surgery. Plaintiffs Jane Doe and Joseph Doe ("Plaintiffs") initiated this action under pseudonyms in the Central District of California, and the case was subsequently transferred to the District of Connecticut. They have asserted the following causes of action against Defendants[1]: (1) fraudulent omission and concealment; (2) strict products liability for failure to warn under the Connecticut

---

[1] Defendants are referred to collectively, but individually they are Bausch & Lomb, Inc.; Valeant Pharmaceutical International, Inc.; Does 1–50; Bausch & Lomb Holdings Inc.; Valeant Pharmaceuticals North America LLM; and Valeant Pharmaceuticals International.

1

Products Liability Act ("CPLA"); (3) strict products liability for manufacturing defect under the CPLA; (4) negligence under the CPLA; (5) negligent misrepresentation; (6) fraud; (7) deceit by concealment under the Cal. Civ. Code §§ 1709, 1710; (8) violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (9) Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and (10) loss of consortium. Plaintiffs oppose this motion presently before this Court. For the following reasons, Defendants' motion is GRANTED.

## Background

Plaintiffs Jane Doe and Joseph Doe are husband and wife, and they reside in Fairfield County, Connecticut. *See* [Dkt. 69 (Am. Compl.) ¶ 1]. Mrs. Doe underwent cataract surgery on September 17 and September 24 of 2014, receiving Trulign Lenses in her left and right eyes. *Id.* ¶ 53. Although the surgeries appeared successful at the outset, some weeks later she developed complications and was later diagnosed with asymmetric vaulting, also known as Z syndrome, in both eyes. *Id.* ¶ 55. She had to undergo "eight painful and ultimately unsuccessful surgical, medical, and other interventions, more than 40 visits to specialists and more [than] 100 tests and other procedures in an unsuccessful effort to correct her vision and remediate the considerable damage to her eyes." *Id.* ¶ 56. As a result, she "struggles to see through a sea of floaters, flashes of lights, and shadows that continuously impair her visual field." *Id.* ¶ 58. The distorted lenses "continuously and significantly obscure, distort, and skew vision in both her eyes, resulting in significant higher order aberrations that make it even more difficult to see." *Id.* ¶ 59.

Mrs. Doe currently works as an attorney. *See* [Dkt. 73 (Opp'n to Mot. Compel) at 9; Dkt. 69 ¶ 60]. She has three minor daughters, a severely disabled son, and a husband who all depend on her income. *See* [Dkt. 73 at 10–11].

## Discussion

Rule 10(a) of the Federal Rules of Civil Procedure provides, "the title of the complaint must name all the parties." This rule "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008). There are certain exceptions to this rule, and the Second Circuit has outlined a non-exhaustive list of factors to consider:

> (1) whether the litigation involves matters that are highly sensitive and [of a] personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the . . . party [seeking to proceed anonymously] or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Id.* at 190 (internal quotation marks and citations omitted). In essence, a plaintiff must be able to show its privacy interest to proceed anonymously outweighs

prejudice to the defendant and public's interest in open judicial proceedings. *See id.* at 189 (holding "that when determining whether a plaintiff may be allowed to maintain an action under a pseudonym, the plaintiff's interest in anonymity must be balanced against both the public interest in disclosure and any prejudice to the defendant"); *Doe I v. Individuals*, 561 F. Supp. 2d 249, 257 (D. Conn. 2008) (holding "[a] party may proceed anonymously only after demonstrating a substantial privacy right which outweighs the customary and constitutionally embedded presumption of openness in judicial proceedings"). A district court is tasked with balancing these factors given the facts of the particular case. *See Sealed Plaintiff*, 537 F.3d at 190.

Plaintiffs ask to proceed under pseudonyms for several reasons. As an initial matter, Plaintiffs are concerned that disclosure of Mrs. Doe's name will jeopardize her right to privacy in her medical records. *See* [Dkt. 73 at 10]. This argument is not persuasive because it is a wholly separate issue. Pursuant to her constitutional rights and D. Conn. Civ. L. R. 5(e)3, Mrs. Doe's medical records may be filed under seal despite her name being disclosed in the case caption.

Plaintiffs' second concern is economic in nature. Plaintiffs contend there is a severe risk of harm for her name to be revealed because "the litigation involves the extreme visual impairment of an attorney whose work and family depend on her ability to continue working." [Dkt. 73 at 9]. This is a purely economic reason and is not sufficient to proceed under a pseudonym. *See Doe v. United Servs. Life Ins. Co.*, 123 F.R.D. 437, 439 n.1 (S.D.N.Y. 1988) ("Courts should not permit parties to proceed pseudonymously just to protect the parties' professional or economic

4

life."); *Doe I*, 561 F. Supp. 2d at 257 ("These harms are not the special harms required in order to proceed anonymously, but rather social stigma, embarrassment, and economic harm, none of which are grounds for proceeding anonymously.").

Plaintiffs insist, however, that their reasons are not just economic as the case is of an "especially sensitive nature" to her family, which includes her three minor daughters and disabled son. Specifically, Plaintiffs claim:

> The injuries have caused Mrs. Doe to become extremely visually impaired and the family is most concerned that the knowledge of the lawsuit may cause emotional distress and harm to Plaintiffs' ability to work, to the confidence her clients place in her as well as may cause emotional distress and further harm to her three young daughters and severely impaired son. She does not wish to jeopardize her family or her ability to support them, when she and they have done nothing wrong.

[Dkt. 73 at 10–11]. Plaintiff states with no particularity why the disclosure of her name in litigation would cause her children emotional harm. As such, this argument appears to obfuscate the real reason: she is afraid her children will be negatively impacted by her loss in business and economic opportunity. This is, of course, an economic reason that should not be permitted standing alone.

The Court acknowledges and is personally sympathetic to Plaintiffs' concerns about the impact of Mrs. Doe's name becoming public. However, when taking a step back, the Court surmises there is at least one litigant in nearly every case who faces a risk of financial consequences by publicly engaging in litigation. Litigation is quintessentially public and public disclosure is in general an inherent collateral consequence of litigation. U.S. Const. amend. I; *New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 289 (2d Cir. 2012) ("[W]e have

concluded that the First Amendment guarantees a qualified right of access not only to criminal but also to civil trials and to their related proceedings and records."). Without more, Mrs. Doe's concerns are purely speculative. As a partner in a law firm, Mrs. Doe enjoys contractual rights to continued employment so long as she remains qualified to represent them. The Court has no basis to find she will not enjoy the same successes as other illustrious members of the bar and bench who are blind or visually impaired. *See, e.g.,* Josh Block and Blake Edwards, *Here's How Google's Blind Lawyer Does His Job*, Big Law Business, Sept. 12, 2016 (describing a day in the life of Jack Chen, a blind attorney who is one of Google's product counsel lawyers); Joseph Shapiro, *She Owes Her Activism to a Brave Mom, the ADA and Chocolate Cake,* Nat'l Pub. Radio, July 31, 2015 (chronicling the life of Haben Girma, a deaf-blind civil rights attorney); Bill Alden and Deborah Pines, *Blind Judge Approved For Federal Bench*, 218 N.Y.L.J. 1 (1997) (discussing Judge Richard C. Casey's appointment); The Associated Press, *Richard Conway Casey, 74, Blind Federal Judge, Dies*, N.Y. Times, Mar. 24, 2007 (Judge Casey's obituary); Barbara Slavin, *A Judge of Character: Although he's blind, David Tatel skis, runs and climbs mountains. By summer's end, he may be a top jurist too*, Los Angeles Times, July 28, 1994 (reporting on Judge David S. Tatel's nomination to the United States Court of Appeals for the District of Columbia).

Because Plaintiffs have not demonstrated a persuasive interest in proceeding anonymously, the Court need not discuss prejudice to Defendant or the public's interest in disclosure as there is nothing to balance these factors

against. The Court also need not address the issue of waiver as this issue is moot because Plaintiffs fail show they are entitled to proceed anonymously.

## Conclusion

For the above reasons, this motion is GRANTED. Plaintiffs shall file a Second Amended Complaint disclosing their identities within 21 days of the date of this order. Defendants shall file an amended Motion to Dismiss within 42 days of the date of this order, Plaintiff's response is due within 21 days of Defendants' filing, and Defendants' reply is due 14 days thereafter.

IT IS SO ORDERED

_____/s/_____

Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: May 16, 2018