UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARJORIE and CHARLES GLOVER,<br><br>                    Plaintiffs,<br><br>        v.<br><br>BAUSCH & LOMB, INCORPORATED,<br>VALEANT PHARMACEUTICALS<br>INTERNATIONAL, INC. N/K/A BAUSCH<br>HEALTH COMPANIES INC., AND DOES 1<br>THROUGH 50, INCLUSIVE,<br><br>                    Defendants. | Case No. 3:18-cv-00352-KAD<br><br><br><br><br><br><br><br><br>NOVEMBER 7, 2022 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**THE THIRD AMENDED COMPLAINT**

**GREENBERG TRAURIG, LLP**
One Vanderbilt Avenue
New York, New York 10017
(212) 801-9200

**GREENBERG TRAURIG, LLP**
Terminus 200
3333 Piedmont Road N.E., Suite 2500
Atlanta, Georgia 30305
(678) 553-2100

**WIGGIN AND DANA LLP**
One Century Tower
265 Church Street, 17th Floor
New Haven, Connecticut 06510
(203) 498-4400

**ORAL ARGUMENT REQUESTED**

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 3

I.     PRE-MARKET APPROVAL OF THE TRULIGN LENSES.............................. 3
II.    PLAINTIFFS' MEDICAL TREATMENT AND CURRENT CONDITION. ................... 4
III.   PROCEDURAL HISTORY.............................................................................. 5
IV.   PLAINTIFFS' THIRD AMENDED COMPLAINT. ......................................... 7

LEGAL STANDARD AND APPLICABLE LAW........................................................ 8

ARGUMENT ............................................................................................................... 8

I.     THE COURT SHOULD STRIKE ALL CLAIMS AND THEORIES THAT
WERE NOT AUTHORIZED BY THE OPINIONS OF THE CONNECTICUT
SUPREME COURT AND SECOND CIRCUIT COURT OF APPEALS........................ 8

     A.    The Court Should Strike Any Allegations Relating to Inadequate Labeling
or Warnings................................................................................................ 9
     B.    The Court Should Strike Other Allegations Remaining From the SAC That
Are Irrelevant to the Remaining Causes of Action ................................. 10
     C.    The Court Should Dismiss Plaintiffs' Newly-Pleaded Failure-to-Train
Claim......................................................................................................... 11

II.    THE COURT SHOULD DISMISS PLAINTIFFS' THREE REMAINING
CLAIMS BECAUSE THEY ARE INADEQUATELY PLEADED. .............................. 11

     A.    Plaintiffs' CPLA Claims Predicated on Alleged Failures to File Adverse
Event Reports Fail Because Plaintiffs Have Not Adequately Alleged
Specific Adverse Event Reports That B+L Should Have, But Failed To,
Report....................................................................................................... 12
     B.    Plaintiffs' CPLA Claims Fail for Lack of a Plausible Theory of Causation. ....... 14

          1.    Plaintiffs' Factual Allegations Are Inconsistent. ..................................... 16
          2.    Plaintiffs' Causation Theory Is Speculative. ........................................... 16

               a.    Causation Based on Allegedly Unreported Adverse Events
Is Implausible.............................................................................. 17
               b.    Causation Based on Alleged Untimeliness of B+L's Safety
Study Is Implausible. .................................................................. 19

     C.    The Court Should Dismiss Plaintiffs' Derivative Claims Because the
Underlying CPLA Claims Fail................................................................. 20

**ORAL ARGUMENT REQUESTED**

CONCLUSION...................................................................................................................... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Aaron v. Medtronic, Inc.*,
  209 F. Supp. 3d 994 (S.D. Ohio 2016) ...................................................................17

*Ashcroft v. Iqbal*,
  556 U.S. 662 ................................................................................................................8

*Bank of Am. v. Pastorelli-Cuseo*,
  No. 3:17-cv-01666 (SRU), 2017 WL 4678184 (D. Conn. Oct. 17, 2017) .............10

*Batoh v. McNeil-PPC, Inc.*,
  167 F. Supp. 3d 296 (D. Conn. 2016) ....................................................................14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .....................................................................................................8

*Brooks v. Mentor Worldwide LLC*,
  No. 19-2088-KHV, 2019 WL 4628264 (D. Kans. Sept. 23, 2019), *aff'd*, 985
  F.3d 1272 (10th Cir. 2021) .....................................................................................20

*Burrell v. Bayer Corp.*,
  260 F. Supp. 3d 485 (W.D.N.C. May 10, 2017) ....................................................15

*Bye v. Cianbro Corp.*,
  951 F. Supp. 2d 322 (D. Conn. 2013) ....................................................................21

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) .......................................................................................3

*D'Addario v. Johnson & Johnson*,
  No. 19-15627 (MAS) (TJB), 2021 WL 1214896 (D.N.J. Mar. 31, 2021) .............13

*Doe v. Bausch & Lomb, Inc.*,
  443 F. Supp. 3d 259 (D. Conn. 2020) ..........................................................5, 10, 11

*Ebrahimi v. Mentor Worldwide LLC*,
  CV 16-7316-DMG, 2017 WL 4128976 (C.D. Cal. Sept. 15, 2017) ...............17, 18

*Ebrahimi v. Mentor Worldwide LLC*,
  No. 16-cv-7316, 2018 WL 2448095 (C.D. Cal. May 25, 2018) .............................15

*Falls v. Novartis Pharms. Corp.*,
  No. 3:13CV270, 2014 WL 3810246 (D. Conn. July 1, 2014) ................................21

*Foran v. Ulthera, Inc.*,
  No. 1:20-cv-00267-DAD-BAM, 2022 WL 507271 (E.D. Cal. Feb. 17, 2022) ......12

*Gale v. Smith & Nephew, Inc.*,
  12 CV3614(VB), 2013 WL 9874422 (S.D.N.Y. Sept. 13, 2013) .............................3

**ORAL ARGUMENT REQUESTED**

*Glover v. Bausch & Lomb, Inc.*,
6 F.4th 229 (2d Cir. 2021) .................................................................................6, 10, 11

*Glover v. Bausch & Lomb, Inc.*,
Case No. 20-1156 (2d. Cir. Aug. 14, 2020), ECF No. 67 ......................................6, 10

*Glover v. Bausch & Lomb Incorporated*,
43 F.4th 304 (2d Cir. 2022) ...................................................................................6, 7, 11

*Hobson v. Klemper Indep. Ins. Co.*,
No. 3:20CV00812(SALM), 2022 WL 4072810 (D. Conn. Sept. 2, 2022) ..............................10

*Kilmer v. Medtronic USA, Inc.*,
No. 1:20-cv-012777-AWI-HBK, 2021 WL 1405198 (E.D. Cal. Apr. 13, 2021) ...................15

*Leonard v. Gen. Motors L.L.C.*,
504 F. Supp. 3d 73 (D. Conn. 2020) .......................................................................2

*Malin v. XL Capital Ltd.*,
499 F. Supp. 2d 117 (D. Conn. 2007) ......................................................................16

*McKenzie v. Abbott Labs.*,
563 F. Supp. 3d 512 (M.D. La. 2021) ......................................................................14

*Murray v. Air & Liquid Sys. Corp.*,
No. 3:18-cv-00889 (MPS), 2022 WL 837358 (D. Conn. Feb. 20, 2020) .........................14

*Nationwide Mut. Ins. Co. v. Morning Sun Bus*,
No. 10-CV-1777, 2011 WL 381612 (E.D.N.Y. Feb. 2, 2011) ..................................16

*Norman v. Bayer Corp.*,
No. 3:16-cv-00253 (JAM), 2016 WL 4007547 (D. Conn. July 26, 2016) .....................15

*Nunn v. Mentor Worldwide, LLC*,
847 F. App'x 373 (9th Cir. Feb. 5, 2021) ................................................................14

*Phila. Indem. Ins. Co. v. Lennox Indus.*,
No. 3:18-cv-00217, 2020 WL 705263 (D. Conn. Feb. 12, 2020) .............................2

*Poozhikala v. Medtronic Inc.*,
CV 21-8889 PA (SKx), 2022 WL 610276 (C.D. Cal. Jan. 31, 2022) ...........................14

*Roncal v. Aurobindo Pharma USA, Inc.*,
No. 3:20-cv-02643, 2022 WL 1237888 (D.N.J. Apr. 27, 2022) ................................13

*Rose v. City of Waterbury*,
No. 3:12cv291(VLB), 2013 WL 1187049 (D. Conn. Mar. 21, 2013) ...........................21

*Simoneau v. Stryker Corp.*,
No. 3:13-CV-1200 (JCH), 2014 WL 1289426 (D. Conn. Mar. 31, 2014) ......................15

*Somerville v. Medtronic, Inc.*,
8:20-cv-021777-JLS-ADS, 2021 WL 5926029 (C.D. Cal. Aug. 19, 2021) ......................12

*U.S. v. Birney*,
686 F.2d 102 (2d Cir. 1982) ....................................................................................10

*Vieira v. Mentor Worldwide, LLC,*
   845 F. App'x 503 (9th Cir. Feb. 5, 2021) ...................................................13

*Weaver v. Ethicon, Inc.,*
   No. 16cv257-GPC(BGS), 2016 WL 7098781 (S.D. Cal. Dec. 6, 2016) ...............13

*Whitnum v. Emons,*
   767 F. App'x 195 (2d Cir. Apr. 25, 2019) ...................................................10

**State Cases**

*Conklin v. Medtronic, Inc.,*
   245 Ariz. 501 (2018) .......................................................................17

*Glover v. Bausch & Lomb, Inc.,*
   343 Conn. 513 (2022) .......................................................................6

**State Statutes**

Conn. Gen. Stat. § 52-572m(b) .................................................................2

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................1, 8
Local Rule 7(f) .............................................................................2

**Regulations**

21 C.F.R. § 803.9 (a) ........................................................................17
21 C.F.R. § 803.50 ...........................................................................4
21 C.F.R. § 803.52 ...........................................................................4

**Other Authorities**

Approval Order P030002/S027, dated May 20, 2013, *available at*
   https://www.accessdata.fda.gov/cdrh_docs/pdf3/P030002S027A.pdf (last
   visited November 7, 2022) ...................................................................3

U.S. FDA, Premarket Approval Database No. P030002, *available at*
   https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?id=P0300
   02 (last visited November 7, 2022) ...........................................................3

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendants Bausch & Lomb Incorporated and Valeant Pharmaceuticals International, Inc. n/k/a Bausch Health Companies Inc. (together, "B+L") respectfully submit this memorandum of law in support of their motion to dismiss the third amended complaint ("TAC").

## PRELIMINARY STATEMENT

This product liability action involves the Trulign Toric intraocular lens ("Trulign Lens"), a Class III medical device manufactured by B+L and approved for sale by the United States Food & Drug Administration ("FDA") pursuant to its rigorous Pre-Market Approval ("PMA") process. Plaintiffs allege that Ms. Glover was injured as a result of a complication associated with the Trulign Lens known as vaulting or Z Syndrome, and that B+L should be liable for their alleged damages.  B+L denies liability and denies that B+L caused or contributed to Plaintiffs' alleged damages in any way.

Over the course of this litigation, the Court has substantially narrowed Plaintiffs' various claims.  For purposes of the TAC, the only two remaining claims are:  (1) a claim under the Connecticut Product Liability Act ("CPLA") (predicated specifically on B+L's alleged failures report adverse events concerning Z Syndrome to FDA and/or B+L's alleged failure to timely conduct a safety study that was a post-market condition of approval for the Trulign Lens), and (2) Plaintiff Charles Glover's ("Mr. Glover's") derivative claim for loss of consortium.

First, although Plaintiffs have narrowed the number of causes of action asserted in their TAC, they have not similarly pruned their factual allegations to those that are directed to Plaintiffs' remaining causes of action, as they were instructed to do at the telephonic Status Conference held on September 29, 2022.  (*See* Transcript of Sept. 29, 2022 Telephonic Conference ("Sept. 29, 2022

**ORAL ARGUMENT REQUESTED**

Tr.") at 5:5-6:17) (ECF No. 163).[1]  In fact, Plaintiffs have even added additional factual allegations

that do not relate to their remaining claims.[2]  Thus, Plaintiffs' TAC does not comport with the

Court's directive in ordering Plaintiffs to amend their pleading to reflect only the causes of action

and theories of liability remaining following the Second Circuit Court of Appeals' remand to this

Court.[3]  Accordingly, any allegations that are extraneous to the properly remaining claims should

be stricken from the TAC, and any claims that were not authorized by the decisions of this Court,

the Connecticut Supreme Court, and the Second Circuit, should be dismissed, as set forth below.

Second, with respect to the claims that Plaintiffs are permitted to plead under the various

decisions in this case—specifically, a claim under the CPLA—Plaintiffs' TAC fails to state a claim

under federal pleading standards:  Plaintiffs' claims predicated on an alleged failure to report

adverse events to the FDA fail because Plaintiffs have not identified any specific reports that

should have been but were not reported, and Plaintiffs' product liability claims under the CPLA

---

[1]     B+L notes that the Court directed Plaintiffs to file their failure to warn claims under one CPLA cause of action.  (*See* Sept. 29, 2022 Tr. at 5:20-6:7, 9:16-21).  Indeed, "the CPLA merges various theories of liability—including strict liability, negligence, and breach of express or implied warranty—into one cause of action."  *Phila. Indem. Ins. Co. v. Lennox Indus.*, No. 3:18-cv-00217, 2020 WL 705263, at *3 (D. Conn. Feb. 12, 2020) (citing Conn. Gen. Stat. § 52-572m(b)); *see also Leonard v. Gen. Motors L.L.C.*, 504 F. Supp. 3d 73, 92 (D. Conn. 2020) (noting that common law claims "cannot proceed as independent causes of action" but should be construed as "one claim under the CPLA with multiple theories").  Accordingly, Plaintiffs' CPLA claims should be merged under one cause of action, rather than two.  For purposes of the present motion, however, B+L refers to Plaintiffs' CPLA claims collectively and treats them as if they are one claim asserting various theories of liability, as the CPLA (and this Court) intended.

[2]     Attached hereto as **Exhibit 1** is a true and correct copy of a redline comparing Plaintiffs' Second Amended Complaint ("SAC") and their TAC, consistent with Local Rule 7(f).

[3]     B+L requested a meet and confer with Plaintiffs' counsel to discuss the TAC's non-compliance with the Court's directive. Counsel met and conferred on November 1, 2022, but Plaintiffs' counsel did not agree to correct the issues with the TAC discussed herein.

fail to plead a plausible theory of causation between the purported violations of B+L's post-market requirements and Plaintiffs' alleged injuries.

Finally, Plaintiffs' derivative claim for loss of consortium and request for punitive damages should be dismissed because they are not independent claims, and the underlying claims under the CPLA are inadequately pleaded.

## FACTUAL AND PROCEDURAL BACKGROUND

## I.     PRE-MARKET APPROVAL OF THE TRULIGN LENSES.

The Trulign Lens received Premarket Approval from the FDA. (TAC ¶ 78). The Trulign Lens was approved as a modification to the Crystalens Intraocular Lens ("Crystalens"), which was initially approved under PMA No. P030002 in 2003. (*Id.* ¶ 56). Including the PMA for the Trulign Lens, the Crystalens has been supplemented, re-evaluated, and re-approved 40 times.[4] The Trulign Lens was approved by the FDA on May 20, 2013.[5] (*See* Ex. 3). In its approval letter, the FDA referenced certain conditions of approval, two of which are at issue here. First, the Trulign™ Toric

---

[4]     *See generally* U.S. FDA, Premarket Approval Database No. P030002, *available at* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?id=P030002 (last visited November 7, 2022). This Court may take judicial notice of facts that are publicly known or material derived from official government websites. *See, e.g., Gale v. Smith & Nephew, Inc.*, 12 CV3614(VB), 2013 WL 9874422, at *2 n.3 (S.D.N.Y. Sept. 13, 2013) (taking judicial notice of publicly available FDA records relating to the premarket approval process).

[5]     Attached hereto as **Exhibit 3** is a true and correct copy of the Approval Order P030002/S027, dated May 20, 2013, which is referenced in Plaintiffs' TAC, and is *available at* https://www.accessdata.fda.gov/cdrh_docs/pdf3/P030002S027A.pdf (last visited November 7, 2022). The Court may consider this document without converting this motion into a summary judgment motion because it is integral, and indeed quoted in, Plaintiffs' TAC. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (in deciding a motion to dismiss, a court may consider a document "incorporated by reference," or when a complaint "relies heavily upon its terms and effects," which renders the document "integral to the complaint") (citations omitted). Additionally, the Court may take judicial notice of this Approval Order because it is a matter of public record. *See Gale*, 2013 WL 9874422, at *2 n.3 (taking judicial notice of publicly available PMA records).

IOL Enrollment Study required B+L "to conduct a single-arm, multi-site prospective study with a sample size of 500 eyes at the end of 3 year follow-up" and to provide follow-up assessments at "1 day, 1 week, 6 month, 1 year, and then every year until the 3rd year of follow-up." (Ex. 3 at 2; *see also* TAC ¶ 79(a)). Second, the FDA "reminded" B+L of its obligation to report adverse events for the Trulign Lens, as required by the Medical Device Reporting regulation, 21 CFR 803.50 and 21 CFR 803.52. (Ex. 3 at 3; *see also* TAC ¶ 102). These post-market conditions of approval form the purported bases of Plaintiffs' CPLA claims.

## II.     PLAINTIFFS' MEDICAL TREATMENT AND CURRENT CONDITION.

Marjory Glover alleges that she underwent two consecutive cataract surgeries on September 17, 2014 and September 24, 2014, during which Trulign Lenses were implanted into her left and right eyes, respectively. (TAC ¶ 42). Plaintiffs allege that Ms. Glover began to "experience severe complications" within weeks of her second surgery, including "significant loss in visual acuity, blurriness, hazing, halos and significant eye pain." (*Id.* ¶ 44). Ultimately, Ms. Glover was diagnosed with "Z Syndrome" in both eyes. (*Id.*). Plaintiffs further allege that Ms. Glover has endured numerous painful surgeries in an unsuccessful effort to restore her vision. (*Id.* ¶ 45). The Lenses remain embedded in Ms. Glover's eyes and cannot be safely removed. (*Id.* ¶ 48). Ms. Glover alleges that she has suffered "significant vision impairment," and, among other things, suffers from loss of balance, vertigo, headaches, eye pain and fatigue, frequently falls and sustains injuries during her daily activities, and can no longer safely drive a car. (*Id.* ¶ 46). Ms. Glover alleges that she has been unable to work to her full capacity and is at risk for diminished earning capacity for the rest of her life. (*Id.* ¶ 36). Mr. Glover alleges that he has suffered a loss of consortium, and has had to provide additional care for his wife and their four children as a result of Ms. Glover's physical injuries. (*Id.* ¶¶ 35, 117-18).

### III.     PROCEDURAL HISTORY.

As the Court is aware, this case has had a complicated and lengthy procedural history.  In the interest of brevity, however, B+L provides the following summary of the procedural history as it is relevant to B+L's instant motion.

Plaintiffs' SAC asserted ten causes of action, including common law and statutory state law claims under Connecticut and California law. B+L moved to dismiss the SAC on several grounds, including that Plaintiffs' claims were preempted by federal law and inadequately pleaded. Following the filing of Defendants' motion to dismiss, Plaintiffs sought leave to amend to add a claim under the Connecticut Unfair Trade Practices Act ("CUTPA").  Following briefing and oral argument, on March 11, 2020, the Court issued its Memorandum of Decision on the Defendants' Motion to Dismiss (ECF No. 95) and Plaintiffs' Motion for Leave to Amend the Complaint (ECF No. 126).   In its Order, the Court held, *inter alia*, that Plaintiffs' common law fraud and misrepresentations claims were barred by the exclusivity provision of the CPLA, and that Plaintiffs' negligence and failure to warn claims under the CPLA were expressly and impliedly preempted by the Medical Device Amendments to the Food, Drug, and Cosmetic Act.  *Doe v. Bausch & Lomb, Inc.*, 443 F. Supp. 3d 259, 270-73 (D. Conn. 2020) (ECF No. 132).

In so ruling, this Court expressly acknowledged that "in the event a claim is not preempted by federal law, the claim must otherwise satisfy the pleading requirements," but the Court did not ultimately reach this issue, as it concluded the claims were preempted.  443 F. Supp. 3d at 272. The Court also denied Plaintiffs' request for leave to add a CUTPA claim based on alleged wrongful marketing, concluding that such a claim would also be preempted by federal law.  443 F. Supp. 3d at 275.

Plaintiffs appealed the order to the Second Circuit Court of Appeals, and in doing so, they expressly conceded that they were not appealing the dismissal of any claims other than their failure

to warn and negligence claims.  *See* Appellants' Br. at 13 n.2, *Glover v. Bausch & Lomb, Inc.*, Case No. 20-1156 (2d. Cir. Aug. 14, 2020), ECF No. 67.  Following briefing and oral argument, the Second Circuit certified two questions to the Connecticut Supreme Court.  Only the first certified question is relevant to the instant motion.  The first certified question asked:

> Whether a cause of action exists under the negligence or failure-to-warn provisions of the [CPLA], or elsewhere in Connecticut law, based on a manufacturer's alleged failure to report adverse events to a regulator like the [FDA] following approval of [a] device, or to comply with a regulator's post-approval requirements."

*Glover v. Bausch & Lomb, Inc.*, 6 F.4th 229, 244 (2d Cir. 2021).

The Connecticut Supreme Court answered this question in the affirmative. *Glover v. Bausch & Lomb, Inc.*, 343 Conn. 513, 557 (2022).  It found that B+L "had a duty under the CPLA to comply with federal laws requiring them to report adverse events associated with the Trulign Lens to the FDA in order to prevent harm to users such as the plaintiff." 343 Conn. at 538. The Connecticut Supreme Court further concluded:

> the plaintiff in the present case can prevail at trial if she establishes that it is more likely than not that, if the defendants had complied in a timely manner with the federal laws requiring them to report adverse events to the FDA and to perform a postmarket safety study, the FDA would have required the defendants to change the labeling of the Trulign Lens or otherwise made the substance of the reports available to healthcare providers before the plaintiff's surgery and that, as a result, she and her physician would not have chosen that device.

343 Conn. at 556.[6]

---

[6]    The second certified question asked, in essence, whether the CPLA's exclusivity provision barred Plaintiffs' proposed CUTPA claim "based on allegations that a manufacturer deceptively and aggressively marketed and promoted a product despite knowing that it presented a substantial risk of injury." *Glover v. Bausch & Lomb, Inc.*, 6 F.4th 229, 244 (2d Cir. 2021).  The Connecticut Supreme Court concluded that it did.  *Glover*, 343 Conn. at 557.  Following the Connecticut Supreme Court's decision and subsequent letter briefing before the Second Circuit, the Second Circuit affirmed this Court's denial of leave to amend Plaintiffs' SAC to add a CUTPA claim. Accordingly, this issue is not relevant to the instant motion.  *Glover v. Bausch & Lomb Incorporated*, 43 F.4th 304, 306 (2d Cir. 2022) (ECF No. 141).

In response to the Connecticut Supreme Court's decision, the Second Circuit ordered the parties to show cause why the Second Circuit should not vacate the Court's dismissal of Plaintiffs' CPLA claims and remand for further proceeding on those claims, and following letter briefing, the Second Circuit ultimately vacated the Court's dismissal of Plaintiffs' negligence and failure to warn claims. *Glover v. Bausch & Lomb Incorporated*, 43 F.4th 304, (2d Cir. 2022) (ECF No. 141).

Upon remand of Plaintiffs' remaining claims to this Court, a status conference was held on September 29, 2022, during which the Court and the parties acknowledged that in light of the Court's dismissal of certain parties and claims (which were aspects of the Court's Order that were not appealed to the Second Circuit), and the Second Circuit's decision on August 8, 2022, only two causes of action remain available to Plaintiffs: liability under the CPLA based on B+L's alleged failures to file adverse event reports and to comply with post-approval conditions for the device at issue, and loss of consortium. Thus, the Court directed Plaintiffs to file an amended pleading to clean up their allegations and causes of action to reflect only those parties and claims that remained properly in issue. (*See* Sept. 29, 2022 Tr. at 5:5-6:17).

## IV.   PLAINTIFFS' THIRD AMENDED COMPLAINT.

In their TAC, Plaintiffs assert three causes of action: (1) Strict Products Liability – Failure to Warn; (2) Negligence; and (3) Loss of Consortium. Although Plaintiffs have omitted several previously-asserted causes of action from their latest complaint, they have not significantly narrowed the factual allegations they asserted in support of those claims. (*See* Exhibit 1.)

Plaintiffs allege that at the time of the implantation procedures, Ms. Glover and her physician—who is not identified by name anywhere in the TAC—were not informed that the Lenses "posed a significantly increased risk of vaulting or Z Syndrome." (TAC ¶ 50). In essence, Plaintiffs allege that B+L failed to comply with its post-market obligations to (a) timely report

adverse events to the FDA and (b) timely conduct a safety study, and that as a result she and her physician were unaware of the risk of Z Syndrome at the time of Plaintiffs' implantation with the Lenses. They allege that "[h]ad Bausch and Lomb complied with their post-market obligations and adequately and timely reported adverse events for Crystalens and Trulign Lenses, Mrs. Glover and her physicians would not have selected Trulign." (*Id.* ¶ 113).

Plaintiffs also allege—for the first time—that "Defendants failed to train the ophthalmologic surgeons [on] the special procedures and safe techniques to implant, and if necessary, explant these very special Lenses." (*Id.* ¶ 52).

Mr. Glover alleges that he has suffered a loss of consortium, and has had to provide additional care for his wife and their four children as a result of Ms. Glover's physical injuries. (*Id.* ¶¶ 117-18). Plaintiffs seek recovery of punitive damages and other relief on their claims. (*Id.* p. 47, Prayer for Relief).

## LEGAL STANDARD AND APPLICABLE LAW

A complaint that fails "to state a claim upon which relief can be granted" should be dismissed. Fed. R. Civ. P. 12(b)(6). On a motion to dismiss, the court must accept factual allegations as true, but it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## ARGUMENT

**I.   THE COURT SHOULD STRIKE ALL CLAIMS AND THEORIES THAT WERE NOT AUTHORIZED BY THE OPINIONS OF THE CONNECTICUT SUPREME COURT AND SECOND CIRCUIT COURT OF APPEALS.**

Plaintiffs' TAC does not comply with the spirit of the Court's directive to amend the complaint to reflect only the CPLA and loss of consortium claims that remain. Plaintiffs' TAC contains a multitude of allegations in the first five sections of the pleading that are extraneous and

irrelevant to the failure to warn and loss of consortium theories of liability at issue. To ensure that these allegations do not become a "back-door" for Plaintiffs to broaden the scope of discovery, or worse, to confuse the issues before the ultimate finder of fact, B+L requests that extraneous allegations that do not bear on the limited set of issues properly before this Court on remand be stricken from the pleading. For the Court's convenience, we have attached as **Exhibit 2** an annotated copy of the TAC, identifying the specific paragraphs (or portions thereof) that B+L proposes should be stricken. The allegations that should be stricken fall into three general categories, as discussed further below.

Thus, the general factual allegations asserted in the TAC are not tailored to the theories of liability the Court permitted Plaintiffs to assert concerning B+L's alleged failures to file adverse event reports and conduct the post-market safety study, and Mr. Glover's alleged loss of consortium, and they should be stricken.

> **A.     The Court Should Strike Any Allegations Relating to Inadequate Labeling or Warnings.**

The TAC continues to include voluminous and extraneous allegations from the SAC that are directed to causes of action and theories of liability that have been dismissed or are otherwise not viable in this case. For example, the TAC still contains allegations that concern: the alleged inadequacy of the device's labeling at the time of Ms. Glover's implants (TAC ¶¶ 86-92, 106-07, 110); the alleged inadequacy of the labeling today (*id.* ¶¶ 97-100); and alleged misrepresentations concerning the device and its risks (*id.* ¶¶ 68, 71, 73-75, 137-145, 166(b)). Allegations that address causes of action and theories of liability that have been dismissed and are no longer at issue in this case should be stricken.

This Court has already determined that any claims premised on alleged inadequacies in the warnings provided to Ms. Glover and her physician are expressly preempted by § 360k(a). *See*

*Doe*, 443 F. Supp. 3d at 270, 272-73 (dismissing common law claims for fraudulent omission, negligent misrepresentation, and fraud, as well as failure to warn Ms. Glover and her physician predicated on allegedly inadequate labeling).  Plaintiffs did not appeal this aspect of the Court's ruling.  *See Glover*, 6 F.4th at 237 (noting that Plaintiffs "explicitly limit their claims to those based on failure to comply with the FDA's post-approval requirements."); Appellants' Br. at 13 n.2, *Glover v. Bausch & Lomb, Inc.*, Case No. 20-1156 (2d. Cir. Aug. 14, 2020), ECF No. 67. Even so, the Second Circuit agreed that "to the extent that the SAC can be read to plead a labeling claim, we agree with the district court that any such claim is expressly preempted." 6 F.4th at 237 n.4.

Accordingly, it is the law of this case that Plaintiffs' claims predicated on the alleged inadequacies of the FDA-approved labeling are preempted and dismissed.  *See Bank of Am. v. Pastorelli-Cuseo*, No. 3:17-cv-01666 (SRU), 2017 WL 4678184, at *2 (D. Conn. Oct. 17, 2017) ("[T]he law of the case [doctrine] 'expresses the general practice of refusing to open what has been decided.'") (quoting *U.S. v. Birney*, 686 F.2d 102, 107 (2d Cir. 1982)); *see also Whitnum v. Emons*, 767 F. App'x 195, 196 (2d Cir. Apr. 25, 2019); *Hobson v. Klemper Indep. Ins. Co.*, No. 3:20CV00812(SALM), 2022 WL 4072810, at *6 (D. Conn. Sept. 2, 2022).  Moreover, the Court ordered Plaintiffs to file an amended pleading on two narrow theories.  (*See* Sept. 29, 2022 Tr. at 5:20-6:17).  The Court should adhere to the law of the case and dismiss any such improper claims, to the extent they are asserted in the TAC.

### B.   The Court Should Strike Other Allegations Remaining From the SAC That Are Irrelevant to the Remaining Causes of Action.

The TAC continues to contain a number of allegations that not only have no bearing on the remaining causes of action, but also are prejudicial and inflammatory. These include, but are not limited to, allegations that concern B+L's financial condition (*id.* ¶¶ 63, 181), and allegedly

improper marketing practices (*id.* ¶¶ 32, 145, 157, 166(a), 182, 185, 192-93). Because these allegations violate the Court's directive to file an amended pleading limited to the two narrow remaining causes of action (*see* Sept. 29, 2022 Tr. at 5:20-6:17), these allegations should be stricken.

### C. The Court Should Dismiss Plaintiffs' Newly-Pleaded Failure-to-Train Claim.

The TAC contains one entirely new allegation: that B+L purportedly failed to train Ms. Glover's physicians (or other physicians not involved in Ms. Glover's care) on "the special procedures and safe techniques to implant, and if necessary, explant these very special Lenses," (TAC ¶ 52). This allegation is being asserted for the first time in the TAC (approximately five years after plaintiffs commenced this action), is not enumerated in Plaintiffs' causes of action, and is completely irrelevant to the remaining claims. It should therefore be stricken.

Any such claim is beyond the scope of the narrow CPLA claims that the Second Circuit remanded to the District Court to decide. *See Glover*, 43 F.4th at 307 ("We previously stated that the Glovers' claims 'can proceed, if at all, only if the CPLA provides a cause of action based on a manufacturer's failure to report adverse events to a regulator like the FDA, or to comply with post-approval requirements set by that regulator.") (citing *Glover*, 6 F.4th at 239). Plaintiffs should not be permitted to add claims beyond those permitted by the various decisions in this case by inserting additional allegations in their pleading. Any claim predicated on an alleged failure-to-train should be stricken.

## II. THE COURT SHOULD DISMISS PLAINTIFFS' THREE REMAINING CLAIMS BECAUSE THEY ARE INADEQUATELY PLEADED.

As this Court has previously acknowledged, "[o]f course, in the event a claim is not preempted by federal law, the claim must otherwise satisfy the [federal] pleading requirements." *Doe*, 443 F. Supp. 3d at 272. As set forth below, Plaintiffs' CPLA claims for strict products

liability failure to warn (Count I) and negligence (Count II), even though not expressly or impliedly preempted, should still be dismissed because they are inadequately pleaded.

> **A.      Plaintiffs' CPLA Claims Predicated on Alleged Failures to File Adverse Event Reports Fail Because Plaintiffs Have Not Adequately Alleged Specific Adverse Event Reports That B+L Should Have, But Failed To, Report.**

Plaintiffs' CPLA claims predicated on B+L's alleged failure to report adverse events to the FDA should be dismissed because they lack the basic specificity required to survive dismissal under *Iqbal* and *Twombly*.  In order to state a claim predicated on an alleged failure to report adverse events, courts require that plaintiffs identify the allegedly un-reported adverse event(s) with some specificity.  *See, e.g., Somerville v. Medtronic, Inc.*, 8:20-cv-021777-JLS-ADS, 2021 WL 5926029, at *12 (C.D. Cal. Aug. 19, 2021) (dismissing failure to warn claim based on alleged under-reporting of adverse events where plaintiff failed to identify any specific unreported adverse event); *Foran v. Ulthera, Inc.*, No. 1:20-cv-00267-DAD-BAM, 2022 WL 507271, at *9 (E.D. Cal. Feb. 17, 2022) ("To survive a motion to dismiss . . . [claim] must include allegations of actual adverse events that [d]efendants did not report") (internal quotations and citation omitted).

The TAC does not provide any specificity regarding the particular adverse events that Plaintiffs claim B+L was aware of and failed to report.  Instead, the TAC relies on generalized and vague allegations of under-reporting.  For example, Plaintiffs allege that at the time the FDA considered whether to approve the Trulign Lens, the FDA had information regarding at least 3 reports of Z Syndrome in the clinical study data (*see* TAC ¶ 76), but that "the reality was that there were approximately 270 medical device reports potentially related to vaulting and 5 cases were reported in the medical literature."  (*Id.* ¶ 77).  Plaintiffs do not explain how these alleged facts (one of which deals with clinical study data, and another which deals with MDR data—which should, by definition, be available to FDA—and medical literature) are inconsistent with each

other.  Plaintiffs also allege that "there are more than five hundred (500) MAUDE Adverse Event Reports to FDA from 2013 through early 2016, linking vaulting to the Trulign Lenses.  In each report, there is no mention of the final medical outcome or whether Lenses were successfully repositioned or removed."[7]  (*Id.* ¶ 126).  These allegations are nonspecific and conclusory and fail to put B+L on notice of any *specific* adverse event that B+L received notice of and should have reported to the FDA but did not.  Plaintiffs' conclusory allegations concerning unidentified events that B+L purportedly failed to report are insufficient to survive dismissal. *See, e.g., Vieira v. Mentor Worldwide, LLC*, 845 F. App'x 503, 505-06 (9th Cir. Feb. 5, 2021) (plaintiffs failed to state parallel claim where they failed to allege actual adverse events that were not reported); *D'Addario v. Johnson & Johnson*, No. 19-15627 (MAS) (TJB), 2021 WL 1214896, at **6-7 (D.N.J. Mar. 31, 2021) (dismissing failure to warn claims where plaintiff alleged vaguely that adverse event data was not reported to the FDA); *Roncal v. Aurobindo Pharma USA, Inc.*, No. 3:20-cv-02643, 2022 WL 1237888, at *8 (D.N.J. Apr. 27, 2022) ("general allegations regarding the purported dearth of adverse event reports over the years do not plausibly allege that [defendant] violated such a duty"); *Weaver v. Ethicon, Inc.*, No. 16cv257-GPC(BGS), 2016 WL 7098781, at *6 (S.D. Cal. Dec. 6, 2016) (plaintiffs failed to allege a parallel failure to warn claim where they alleged "only conclusory allegations that Defendant failed to report adverse events without specific instances of actual adverse events").  Plaintiffs have had ample time and opportunity to identify which particular adverse event reports underlie their claims, and their failure to do so is telling.  To the extent Plaintiffs' claims are predicated on a failure to report adverse events, this failure alone is itself sufficient to require dismissal of Plaintiffs' claims.

---

[7]     If anything, these allegations suggest that FDA was aware of the purported adverse events, which creates a causation problem for Plaintiffs, as discussed further below.

B.      **Plaintiffs' CPLA Claims Fail for Lack of a Plausible Theory of Causation.**

Plaintiffs' CPLA claims also fail to satisfy federal pleading standards for the additional reason that Plaintiffs have not adequately alleged facts in support of causation, which is an essential element of their CPLA claims.  *See, e.g., Murray v. Air & Liquid Sys. Corp.*, No. 3:18-cv-00889 (MPS), 2022 WL 837358, at *2 (D. Conn. Feb. 20, 2020); *Batoh v. McNeil-PPC, Inc.*, 167 F. Supp. 3d 296, 315 (D. Conn. 2016).  Thus, to state a claim for failure to warn or negligence under the CPLA, Plaintiffs must adequately allege facts supporting their claim that B+L's alleged post-market failures to report adverse events and/or timely conduct the post-market study proximately caused Plaintiffs' injuries.  This Plaintiffs have not done.

As B+L has argued in each of its motions to dismiss Plaintiffs' prior pleadings, courts across the country have made clear that to survive dismissal on claims based on alleged post-market failures, either to report adverse events or comply with post-market studies, a plaintiff must sufficiently allege a causal link between the defendant's alleged violations of its obligations and the plaintiff's injuries.  *See, e.g., Nunn v. Mentor Worldwide, LLC*, 847 F. App'x 373, 376 (9th Cir. Feb. 5, 2021) (conclusory and speculative allegations that defendants would have uncovered additional adverse events if they had conducted post-market study differently, without reference to "actual adverse events" that were not reported to the FDA were insufficient to state a parallel claim for failure to warn); *Poozhikala v. Medtronic Inc.*, CV 21-8889 PA (SKx), 2022 WL 610276, at *6 (C.D. Cal. Jan. 31, 2022) (plaintiffs' failure to warn claim failed to plead sufficient facts of a "causal connection between their injuries and the alleged failure to report" where they did not allege a failure to report prior to plaintiffs' injuries); *McKenzie v. Abbott Labs.*, 563 F. Supp. 3d 512, 523-24 (M.D. La. 2021) (plaintiffs failed to allege an adequate causal link between defendant's alleged failure to report adverse events and plaintiff's injuries because "while it is

possible that there were unreported, relevant, adverse events in the thirteen-day period between FDA approval and implantation into McKenzie, Plaintiffs have not alleged sufficient facts from which the Court could infer that it is plausible that the reports of those events would have reached Dr. Ventura in time for him to act differently when implanting the Heartmate 3"); *Kilmer v. Medtronic USA, Inc.*, No. 1:20-cv-012777-AWI-HBK, 2021 WL 1405198, at **8-9 (E.D. Cal. Apr. 13, 2021) (plaintiff failed to establish the requisite "causal nexus" because she did "not clarify what specific unreported adverse event caused her to suffer her injuries"); *Norman v. Bayer Corp.*, No. 3:16-cv-00253 (JAM), 2016 WL 4007547, at *12-13 (D. Conn. July 26, 2016) ("Even if the [failure to warn claim] were not preempted, plaintiff fails to plead facts that plausibly connect defendants' alleged reporting violations to her injuries."); *Simoneau v. Stryker Corp.*, No. 3:13-CV-1200 (JCH), 2014 WL 1289426, at *10 (D. Conn. Mar. 31, 2014) ("scant pleadings … do[] not link [plaintiff's] injury to a violation, nor can the court reasonably infer such a link"); *Burrell v. Bayer Corp.*, 260 F. Supp. 3d 485, 492 (W.D.N.C. May 10, 2017) (even where plaintiff alleged defendant failed to report more than 16,000 complaints to the FDA, because the FDA already had knowledge of the complaints, the plaintiff "failed to provide a sufficient causal link between the failure to warn and the alleged injury"); *Ebrahimi v. Mentor Worldwide LLC*, No. 16-cv-7316, 2018 WL 2448095, at *3 (C.D. Cal. May 25, 2018) (plaintiff failed to establish causal nexus between alleged under-reporting and injuries because she did not "allege any specific facts showing that had Mentor not 'covered up' these purported adverse events, the FDA would have required Mentor to modify its labeling and marketing materials or otherwise warn patients and doctors" of risk).  For the reasons set forth below, Plaintiffs have not adequately alleged that their injuries were proximately caused by any alleged failure of B+L to comply with its post-market obligations, warranting dismissal of Plaintiffs' CPLA claims.

1.      **Plaintiffs' Factual Allegations Are Inconsistent.**

Like each of their prior pleadings, Plaintiffs' TAC continues to rest on implausible factual assumptions and is rife with internal inconsistencies that fail to demonstrate causation.  Plaintiffs' failure to amend the factual allegations supporting their only remaining claims is telling.  For example, Plaintiffs simultaneously allege Z Syndrome risks were inadequately disclosed to the FDA *and* that more than 500 MAUDE adverse event reports were filed with the FDA.  (*Compare* TAC ¶¶ 71, 74 *with* ¶ 126).  These allegations are both conclusory and internally inconsistent.  The Court is not required to reconcile or accept contradictory allegations.  *See, e.g., Malin v. XL Capital Ltd.*, 499 F. Supp. 2d 117, 128 (D. Conn. 2007) (noting that "[t]he court need not accept, however, mere conclusions of law or unwarranted deductions . . . that are contradicted") (internal citations and quotations omitted); *see also Nationwide Mut. Ins. Co. v. Morning Sun Bus*, No. 10-CV-1777, 2011 WL 381612, at *6 (E.D.N.Y. Feb. 2, 2011) ("Where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept contradictory allegations in the pleadings as true in deciding a motion to dismiss") (internal citation and quotations omitted).

2.      **Plaintiffs' Causation Theory Is Speculative.**

Plaintiffs' causation allegations are entirely speculative and unsupported by any specific factual allegations showing that the FDA, Plaintiffs, or Ms. Glover's physician would have acted differently if B+L had reported additional adverse events or timely conducted the safety study. Plaintiffs' causation theory requires a series of several unsupported assumptions:  Plaintiffs ask this Court to accept that *if* B+L had reported additional adverse events and timely begun their safety study (which, Plaintiffs presume based on pure speculation, would have revealed additional adverse events), *then* the FDA would have made those reports public and/or required B+L to revise the labeling for the Trulign Lens prior to Ms. Glover's surgeries, *and* Ms. Glover's physician would have reviewed the additional data and/or warnings prior to Ms. Glover's surgeries, *and* Ms.

Glover and her physician would therefore have decided not to implant the Trulign Lenses in Ms. Glover's eyes to treat her cataracts.  These leaps are not supported by the factual allegations in the TAC, and thus the CPLA claims are not plausible.  *See, e.g., Ebrahimi v. Mentor Worldwide LLC*, CV 16-7316-DMG (KSx), 2017 WL 4128976, at *5 (C.D. Cal. Sept. 15, 2017) (dismissing failure to warn claims in part because plaintiff failed to allege how alleged under-reporting of issue with the device "would have caused the FDA to require different labeling").

> a.   *Causation Based on Allegedly Unreported Adverse Events Is Implausible.*

Preliminarily, even if B+L had known about additional adverse events and reported them to the FDA prior to Ms. Glover's 2014 implant surgeries, it is speculative to infer that those reports would have been made publicly available and, further, that Ms. Glover's treating physician would have seen any such report and decided not to implant the Trulign Lens in Ms. Glover's eyes as a result.[8]  First, Adverse event reports are not automatically made public for physicians to review. *See, e.g., Aaron v. Medtronic, Inc.*, 209 F. Supp. 3d 994, 1005 (S.D. Ohio 2016) ("Although the FDA *may* disclose [adverse event] reports, it is not required to do so. . . . Thus, [adverse event] reports . . . are not automatically made public.") (emphasis in original, citations omitted).[9]  Second,

---

[8]      To the extent Plaintiffs assert that the submission of additional adverse event reports would have caused the FDA to require B+L to update its labeling, that assumption is also implausible and unsupported in Plaintiffs' factual allegations.  *See* Section II(B)(2)(b), *infra*.

[9]      *See also Conklin v. Medtronic, Inc.*, 245 Ariz. 501, 508 (2018) ("[A] manufacturer . . . cannot have a reasonable assurance that the information in adverse event reports will reach end users (or end users' [healthcare] providers) . . . because the FDA is not required to publicly release such reports [under] 21 C.F.R. § 803.9 (a) [which provides] that the FDA *may* disclosure to the public any [adverse event] report . . . [R]elatedly, when the FDA exercises its discretion to release adverse event reports publicly, it does so only passively by uploading the reports to a database. . . . An end user (or an end user's health care provider) must then affirmatively access the database and search for adverse events.") (citations and internal quotation marks omitted; emphasis in original).

the risk of Z Syndrome was not unknown at the time of Plaintiffs' surgeries, and Plaintiff does not allege that her physician was entirely unaware of the risk of Z Syndrome.  (*See, e.g.,* TAC ¶¶ 50-51, 73 (describing that Ms. Glover and her physician did not know of the allegedly "increased risk" of Z Syndrome associated with the Trulign Lens), ¶¶ 76-77 (reflecting that cases of Z Syndrome were reported to FDA and in medical literature).  Third, Plaintiffs do not allege that Ms. Glover's treating physician referred to the MAUDE database and adverse event reports—nor for that matter to labeling or other materials—in deciding whether to implant the Trulign Lenses in Ms. Glover's eyes.  (*See* TAC ¶ 110) ("When Mrs. Glover's implanting physician considered using Trulign Lenses, the only mention of vaulting in the physician labeling was that 'a wound leak could cause forward vaulting of the optic.'").  Rather, Plaintiffs allege in a conclusory fashion that "[w]hen the Trulign Lenses were implanted by Mrs. Glover's ophthalmic surgeon in Connecticut, neither Plaintiffs nor her ophthalmic surgeon were informed of the increased risk of vaulting from the Lenses" (*id.* ¶ 84), and further, that "[h]ad [B+L] complied with their post-market obligations and adequately and timely reported adverse event reports for Crystalens and Trulign Lenses, Mrs. Glover and her physician would not have selected Trulign." (*Id.* ¶ 113).[10]  These conclusory allegations are not sufficient to avoid dismissal under *Iqbal* and *Twombly. See, e.g., Ebrahimi*, 2017 WL 4128976, at *5 (plaintiff failed to allege a sufficient causal nexus between her injuries and defendant's failure to report adverse events to the FDA because she did not allege, *inter alia*, "how any reporting by [defendant] to the FDA would have caused her surgeon to stop using the

---

[10]     Plaintiffs also allege that "[a]t the time of implant, neither Mrs. Glover, nor her physician had any reason to believe that the risk of Z Syndrome associated with Crystalens and Trulign Lenses were anything but rare, or that the available treatments would not be successful." (TAC ¶ 113). This allegation is inconsistent with Plaintiffs' allegations that in "reality . . . there were approximately 270 medical device reports potentially related to vaulting and 5 cases reported in the medical literature." (*Id.* ¶ 77).

Implants or her to regain from having the breast-implant surgery with the devices at issue, considering the potential health consequences of which she was already aware.").

Moreover, to the extent Plaintiffs allege that B+L "failed to timely file numerous adverse event reports in Mrs. Glover's case [i.e., Mrs. Glover's own adverse events], despite that [B+L] was informed of these adverse results on numerous occasions[,]" (TAC ¶ 104), there is no plausible argument that B+L's alleged failures to file reports concerning Mrs. Glover's own adverse events caused her outcome.

     *b. Causation Based on Alleged Untimeliness of B+L's Safety Study Is Implausible.*

Similarly, it is speculative to infer that B+L's failure to timely conduct the required safety study proximately caused Plaintiffs' injuries. Preliminarily, as Plaintiffs allege, the study was a 3-year-long study. (TAC ¶ 79). Thus, by its own terms, B+L could not have completed the study prior to Ms. Glover's surgeries in September 2014, less than a year and half after the Trulign Lens received PMA approval in May 2013. In other words, even assuming B+L had completed the safety study precisely as FDA required in its conditions of approval, the study would not have been completed prior to Ms. Glover's procedures, and by extension, FDA would not have had the opportunity to require different or additional warnings based on the study's finding prior to Ms. Glover's surgeries.

Plaintiffs allege that B+L did not begin the safety study until March 2015 (six months after Plaintiffs' implantation surgeries). (*Id.* ¶ 82). They further allege that B+L failed to provide timely progress reports to the FDA four times, and that "[w]hile the findings have not been published, in February 2016, [B&L] proposed changes to its Trulign and Crystalens labels." (*Id.* ¶ 83). Plaintiffs do not allege *how* B+L's alleged short-comings in conducting the safety study *caused* Plaintiffs' particular injuries. Rather, Plaintiffs vaguely conclude that, had the study been started

earlier, B+L would have changed its labeling prior to Ms. Glover's surgery, and Ms. Glover and her physician would not have implanted the Trulign Lens if they had received the updated warnings.  Plaintiffs' allegations are not supported by sufficient facts linking these hypothetical events (and Plaintiffs' injuries) together.

It is entirely speculative for Plaintiffs to assume, and for this Court to infer, that some unidentified and unquantified additional data would have prompted the FDA to require B+L to change its labeling prior to Ms. Glover's surgeries (and with sufficient time for the label changes to take effect and accompany the devices distributed to Ms. Glover's physician, and for Ms. Glover's physician to review the new labeling and recommend an alternative course of treatment) without more specifics than Plaintiffs have alleged.  Indeed, their hypothesis is belied by the fact that, as Plaintiffs allege, the FDA was aware of reports of Z Syndrome prior to Ms. Glover's surgeries, (*id.* ¶¶ 67, 126), and thus presumably, the FDA reviewed these reports but did not require B+L to change its labeling. Plaintiffs do not explain how the FDA would have reviewed the data from the study and responded differently.  Plaintiffs' string of inferences is too tenuous and unsupported by factual allegations to withstand dismissal.  *See, e.g., Brooks v. Mentor Worldwide LLC*, No. 19-2088-KHV, 2019 WL 4628264, at *6 (D. Kans. Sept. 23, 2019) (dismissing failure to warn claims based in part on post-market study, because plaintiffs' allegations required the court to make assumptions about the publication of the results, and the prescribing physicians' access and reliance on that information were "far too speculative to meet the 'plausibility' standard of Twombly and Iqbal."), *aff'd*, 985 F.3d 1272 (10th Cir. 2021).

> **C.** **The Court Should Dismiss Plaintiffs' Derivative Claims Because the Underlying CPLA Claims Fail.**

Plaintiff Charles Glover's claim for loss of consortium (Count III) and the request for punitive damages should be dismissed because they are contingent on and derivative of Mrs.

Glover's failed causes of action under the CPLA. "Because a loss-of-consortium claim is merely derivative of a claim brought by an injured spouse . . ., the former is barred as a matter of law if the latter is ultimately unsuccessful on the merits." *Bye v. Cianbro Corp.*, 951 F. Supp. 2d 322, 330 (D. Conn. 2013); *accord Falls v. Novartis Pharms. Corp.*, No. 3:13CV270, 2014 WL 3810246, at *5 (D. Conn. July 1, 2014).

Similarly, Plaintiffs' request for punitive damages is not an independent cause of action but requires an underlying claim. *Rose v. City of Waterbury*, No. 3:12cv291(VLB), 2013 WL 1187049, at *10 (D. Conn. Mar. 21, 2013) ("A claim for punitive damages 'is not a separate count inasmuch as it is a remedy.'") (internal citation omitted).

Because Plaintiffs' underlying claims merit dismissal, the Court should also grant dismissal of these derivative claims as well.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court grant their motion dismissing Plaintiffs' Third Amended Complaint in its entirety, or at a minimum, striking extraneous and prejudicial allegations from the pleading.

Dated:   November 7, 2022

GREENBERG TRAURIG, LLP

/s/   Daniel I.A. Smulian
Daniel I.A. Smulian (admitted *pro hac vice*)
Glenn S. Kerner (admitted *pro hac vice*)
Nilda M. Isidro (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017
Tel.: (212) 801-9200
Fax: (212) 801-6400
Email: SmulianD@gtlaw.com
Email: KernerG@gtlaw.com
Email: IsidroN@gtlaw.com

Lori G. Cohen (admitted *pro hac vice*)

21

GREENBERG TRAURIG, LLP
Terminus 200
3333 Piedmont Road N.E., Suite 2500
Atlanta, Georgia 30305
Tel.: (678) 553-2385
Fax: (678) 553-2386
Email: CohenL@gtlaw.com

James O. Craven (CT18790)
WIGGIN AND DANA LLP
One Century Tower
265 Church Street, 17th Floor
New Haven, Connecticut 06510
Tel.: (203) 498-4400
Fax: (203) 782-2889
Email: jcraven@wiggin.com

*Attorneys for Defendants Bausch &*
*Lomb Incorporated and Valeant Pharmaceuticals*
*International, Inc. n/k/a Bausch Health*
*Companies Inc.*

22

## <u>CERTIFICATION</u>

I hereby certify that on November 7, 2022, a copy of the foregoing Memorandum of Law In Support of Defendants' Motion to Dismiss Plaintiffs' Third Amended Complaint was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF system.

/s/ Daniel I.A. Smulian
Daniel I.A. Smulian (admitted *pro hac vice*)
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
Tel.: (212) 801-9200
Fax: (212) 801-6400
Email: smuliand@gtlaw.com